1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF IOWA
2                       DAVENPORT DIVISION

3

4    UNITED STATES OF AMERICA,          )
                                        )
5                                       )
                           Plaintiff,   ) CASE NO. 3:05-cr-525
6                                       )
                                        )
7                    vs.                )
                                        ) PLEA
8    LEBARON HARRIS,                    ) PROCEEDINGS
                                        )
9                        Defendant.     )         ORIGINAL

10

11                   The hearing commenced at 9:15 a.m. on
                     Novemver 18, 2005.
12

13   BEFORE:         The Honorable Thomas J. Shields, U.S.
                     Magistrate Judge.
14
     APPEARANCES: Attorney Richard Westphal,
15                   Assistant U.S. Attorney,
                     131 E. 4th Street,
16                   Davenport, Iowa 52801,
                     appeared on behalf of the Plaintiff.
17

18                   Attorney Donovan S. Robertson,
                     of the firm of Coyle, Gilman, Stengel,
19                   Bailey & Robertson,
                     100 17th Street, Suite 405,
20                   Rock Island, Illinois 61201,
                     appeared on behalf of the Defendant.
21

22   REPORTER:        Kara M. Sullivan, CSR, RPR
                     Certified in Iowa & Illinois
23                   637 4th Avenue West
                     Andalusia, Illinois 61232
24

25

1          THE COURT:  We are in open court on the record

2    in the matter of United State of America versus Lebaron

3    Harris, Case No. 05-525.  We're here this morning for

4    plea proceedings.  Mr. Westphal, is the government

5    ready to proceed?

6          MR. WESTPHAL:  We are.

7          THE COURT:  Mr. Robertson, are you and Mr.

8    Harris ready to proceed?

9          MR. ROBERTSON:  Yes, Your Honor.

10         THE COURT:  Good.  Mr. Harris, will you stand,

11   please, and raise your right hand to be sworn?

12                  LEBARON HARRIS,

13   being first duly sworn, was examined and testified as

14   follows:

15         THE COURT:  Thank you, Mr. Harris, you may be

16   seated.  Mr. Harris, I want to remind you that you are

17   under oath.  Your answers to my questions must be

18   truthful and honest.  If you would fail to do that, you

19   could be charged with perjury and/or obstruction of

20   justice.  Do you understand that?

21         MR. HARRIS:  Yes, sir.

22         THE COURT:  Good.  You have signed a consent

23   to proceed before the magistrate judge this morning.  I

24   want to remind you, first of all, you're not required

25   to sign this consent.  You do have a right to proceed

1    before a district judge, if you want to.  Did you
2    discuss this consent with Mr. Robertson before you
3    signed it?
4              MR. HARRIS:  Yes, sir.
5              THE COURT:  Did you sign this consent
6    voluntarily?
7              MR. HARRIS:  Yes, sir.
8              THE COURT:  And do you wish to proceed before
9    the magistrate judge this morning?
10             MR. HARRIS:  Yes, sir.
11             THE COURT:  Thank you.  Mr. Harris, would you
12   tell me your age, please?
13             MR. HARRIS:  26.
14             THE COURT:  How far in school did you attend?
15             MR. HARRIS:  Eleventh grade.
16             THE COURT:  Do you have any problems reading,
17   writing, or understanding English?
18             MR. HARRIS:  No, sir.
19             THE COURT:  Do you believe you've had enough
20   time to meet with Mr. Robertson to go over the evidence
21   the government has produced against you in this case,
22   and to discuss with him the issues that are involved in
23   your case?
24             MR. HARRIS:  Yes, sir.
25             THE COURT:  Has he been able to answer your

1   questions?

2          MR. HARRIS:  Yes, sir.

3          THE COURT:  Are you satisfied with his

4   representation of you?

5          MR. HARRIS:  Yes, sir.

6          THE COURT:  Mr. Harris, are you currently

7   being treated by a medical doctor, including a

8   psychiatrist?

9          MR. HARRIS:  No, sir.

10         THE COURT:  Are you taking any medications?

11         MR. HARRIS:  No, sir.

12         THE COURT:  In the last 24 hours have you

13  taken any medications, any drugs, or consumed any

14  alcohol?

15         MR. HARRIS:  No, sir.

16         THE COURT:  Mr. Robertson, do you have any

17  information or evidence that would suggest or establish

18  that Mr. Harris is not competent to proceed this

19  morning?

20         MR. ROBERTSON:  None, Your Honor.

21         THE COURT:  Mr. Westphal, does the government

22  have any reason to believe Mr. Harris is not competent

23  to proceed?

24         MR. WESTPHAL:  No, Your Honor.

25         THE COURT:  I've had no evidence presented to

1   me that would suggest or establish that Mr. Harris is

2   not competent. I've listened to his answers to my

3   questions this morning. His answers have been

4   appropriate and direct. I'm able to observe him in

5   person this morning, and I find that he is competent to

6   proceed.

7         Mr. Harris, I think you know, but I want to

8   remind you, you are not required and you cannot be

9   compelled to enter pleas of guilty to the charges

10   contained in the indictment. You have a Constitutional

11   Right to have a jury trial, if you wish. If you want

12   to plead guilty, that is also your right, but it's my

13   job to make certain that if you do want to plead

14   guilty, you are doing it voluntarily and of your own

15   free will. So I'm going to discuss with you several

16   things this morning, first of all, to make certain that

17   I'm satisfied that you're doing this voluntarily, and

18   secondly, to make certain that you think about what

19   you're doing so that you know this is what you want to

20   do also.

21         As I indicated, if you do plead guilty, first

22   you will waive your right to a trial by jury, and in

23   fact you will waive your right to any type of trial in

24   this court, including having a jury decide your

25   sentence. And I want to tell you about a jury trial so

1    you'll know exactly what it is that you will be
2    waiving.  The jury consists of twelve people.  Those
3    twelve people are picked in open court.  You and Mr.
4    Robertson participate in that selection, as does the
5    attorney for the government.  After those twelve people
6    are selected, they hear all the evidence that is
7    allowed by the trial judge at the time of trial.  That
8    includes testimony from witnesses, it includes
9    documents.

10           You do not have a burden of proof in this
11   case.  The government has the burden of proving beyond
12   a reasonable doubt that you did what is alleged in the
13   indictment.  Because you do not have a burden of proof,
14   you are not required to call witnesses, you're not
15   required to offer evidence.  You have the right to
16   testify at trial, but you do not have to.  You cannot
17   be forced or compelled to testify at trial.  If you
18   decide not to testify at trial, the government cannot
19   argue to the jury or suggest or imply to the jury that
20   because you did not testify, that means that you are
21   guilty.

22           Every witness who testifies must do so in open
23   court in your presence.  Every witness that the
24   government would call at trial is subject to
25   cross-examination by Mr. Robertson on your behalf.  In

1   addition, Mr. Robertson also has the right and the duty
2   to object to certain evidence that the government might
3   seek to offer, if he feels it is improper or
4   irrelevant.

5           After the jury has heard all the evidence,
6   then the judge will read the instructions of the law to
7   the jury, and then the jury will deliberate in secret
8   to reach a verdict.  The verdict has to be unanimous.
9   If one or more jurors disagree with the other jurors
10  and they cannot reach an agreement, then a mistrial
11  would be ordered and a new trial would likely be
12  ordered.  Mr. Harris, do you understand what I've just
13  explained about a jury trial?

14          MR. HARRIS:  Yes.

15          THE COURT:  And you know that if you plead
16  guilty this morning, you will waive that type of trial?

17          MR. HARRIS:  Yes.

18          THE COURT:  Knowing that you will be waiving
19  your Constitutional right to a trial by jury, or any
20  type of trial in this case, do you still wish to
21  proceed to plead guilty this morning?

22          MR. HARRIS:  Yes, sir.

23          THE COURT:  Are you doing this voluntarily and
24  of your own free will?

25          MR. HARRIS:  Yes, sir.

1          THE COURT:   Has anyone in any way made

2  promises to you, made threats against you or coerced

3  you in any way so that you would tell me this morning

4  that you do want to plead guilty?

5          MR. HARRIS:   No, sir.

6          THE COURT:   You have discussed these issues

7  with Mr. Robertson, and based on your discussions with

8  him, that has helped you decide that you want to plead

9  guilty; is that correct?

10          MR. HARRIS:   Yes, sir.

11          THE COURT:   If you do enter pleas of guilty

12  this morning, Mr. Harris, I will ask you some

13  additional questions.   You will have to answer those

14  questions.   Because you will be under oath, you will

15  have to answer those questions truthfully, even though

16  the answers will incriminate you.   Do you understand

17  that?

18          MR. HARRIS:   Yes, sir.

19          THE COURT:   That is a waiver of your right

20  against self-incrimination, and it is required if you

21  do plead guilty.   Knowing that you must waive that

22  Constitutional Right also, do you still want to proceed

23  to plead guilty?

24          MR. HARRIS:   Yes.

25          THE COURT:   And you're telling me that you're

1    doing this voluntarily of your own free will?

2         MR. HARRIS:  Yes, sir.

3         THE COURT:  Mr. Westphal, would you first

4    state for the record the essential elements of Counts 1

5    and 2 of this superseding indictment?

6         MR. WESTPHAL:  Counts 1 and 2 both essentially

7    have the same elements, that the government would have

8    to prove each element beyond a reasonable doubt.  Count

9    1 would require the government to prove that on or

10   about October 21, 2004, that the defendant took money

11   from a person or presence of West Bank in Johnson

12   County, in the Southern District of Iowa.  That such

13   taking was by force, violence, and intimidation, and

14   that at the time, those funds were insured by the

15   Federal Deposit Insurance Corporation.

16        Count 2 would require the government to prove

17   beyond a reasonable doubt that on or about November 9,

18   2004, in Iowa City, Johnson County, Iowa, in the

19   Southern District of Iowa, that the defendant did take

20   from the person or presence of the U.S. Bank money that

21   was in their care, custody, and control, and that such

22   taking was by force, violence, or intimidation, and

23   that at the time of that taking those funds were

24   insured by the Federal Deposit Insurance Corporation.

25        On each count the government would have to

1    prove each and every one of these elements beyond a

2    reasonable doubt.  Mr. Harris, do you understand the

3    essential elements the government would have to prove

4    if this matter proceeded to trial?

5              MR. HARRIS:  Yes, sir.

6              THE COURT:  Thank you, Mr. Westphal.  Would

7    you now please advise Mr. Harris as to the maximum

8    sentences he could receive if he does plead guilty to

9    Counts 1 and 2 of the superseding indictment?

10             MR. WESTPHAL:  Each count would carry the same

11   potential penalty of not more than 25 years in prison,

12   up to a $250,000 fine, or both fine and imprisonment, a

13   $100 special assessment per count, and a period of

14   supervised release of not more than five years.

15   Supervised release means that after you have served

16   your time in prison, when you're released, if you

17   violate the conditions of your release, you could be

18   sent for additional time in prison up to five years.

19   Again, those penalties are for each Count 1 and 2.  Mr.

20   Harris, do you understand the potential penalties to

21   the counts you are pleading guilty to this morning?

22             MR. HARRIS:  Yes, sir.

23             THE COURT:  Thank you, Mr. Westphal.  Mr.

24   Harris, the sentences that will be imposed are within

25   the discretion of the district judge who will preside

1    at the sentencing hearing.  The judge cannot impose a

2    sentence that is greater than the maximum sentences

3    allowed by the statute that Mr. Westphal has just

4    described to you.  However, the judge does have the

5    right, under Rule 35 of the Federal Rules of Criminal

6    Procedure, to depart from Guidelines that might be

7    applicable in your case.  If the judge does use those

8    Guidelines in an advisory capacity -- you may have

9    discussed the Guideline range with Mr. Robertson, and

10   so you hopefully will have some understanding of that

11   is.  But I must tell you, the judge is not required to

12   use the Guidelines if he does not want to.

13            In any event, if the judge imposes the maximum

14   sentence on each of these guilty pleas, or if he

15   imposes sentences that you believe are not fair or are

16   too harsh, you will not have the right to withdraw your

17   pleas of guilty to Counts 1 and 2 of the superseding

18   indictment.  Do you understand that?

19            MR. HARRIS:  Yes, sir.

20            THE COURT:  Knowing that you cannot withdraw

21   your pleas of guilty under these circumstances, Mr.

22   Harris, do you still wish to proceed to plead guilty?

23            MR. HARRIS:  Yes, sir.

24            THE COURT:  And you're telling me this is

25   something you are doing voluntarily and of your own

1    free will?

2             MR. HARRIS:  Yes.

3             THE COURT:  Mr. Harris, has anyone promised

4    you or predicted to you what your sentence will be in

5    this case?

6             MR. HARRIS:  No, sir.

7             THE COURT:  So you understand that it is up to

8    the discretion of the judge?

9             MR. HARRIS:  Yes, sir.

10            THE COURT:  I want to tell you also, Mr.

11   Harris, even though you cannot withdraw your pleas of

12   guilty, as we've just discussed, because there was no

13   plea agreement in this case, you have not waived your

14   rights of appeal to either the conviction or any

15   sentences that are imposed.  Do you also understand

16   that?

17            MR. HARRIS:  Yes, sir.

18            THE COURT:  Mr. Westphal, would you please

19   state for the record the facts that the government

20   would offer if this case did proceed to trial on Counts

21   1 and 2 of the superseding indictment?

22            MR. WESTPHAL:  If this matter proceeded to

23   trial the government would present evidence in the form

24   of testimony and exhibits that would establish that on

25   or about October 21st, 2004, at the West Bank in Iowa

1    City, which is in the Southern District of Iowa, bank
2    witnesses would describe a black male subject in a gray
3    hooded sweatshirt entered the bank and approached a
4    teller window, presented a note in a white paper bag to
5    a teller, the note saying put the money in the bag or
6    I'll use this gun.

7              Also reported, while giving the money, the
8    defendant told her come on, come on, that the bank
9    witnesses would testify that the teller provided
10   approximately $2,900 of U.S. currency that was on that
11   date in the care and custody and control of the West
12   Bank.   That these actions were captured on a bank
13   surveillance video tape, that subsequent to the robbery
14   photographs off that surveillance tape were circulated
15   to the media.

16             The evidence would show approximately on
17   October 22nd that a Gina Turner, the mother of a female
18   that the defendant was involved with, reported to the
19   police that she recognized the individual in these
20   photographs as the defendant, Lebaron Harris.

21             Subsequent to that, a photo array was put
22   together and shown to the involved teller, who
23   identified the defendant's picture out of a photo
24   array, describing that she was pretty sure, or
25   98 percent sure that the defendant was the subject who

                Kara M. Sullivan Reporting
              Andalusia, Illinois (309) 798-5198

1    robbed her.

2            On approximately October 30th, 2004, the Iowa

3    City Police Department received additional information

4    from an Amanda Comtois, C-O-M-T-O-I-S, who reported

5    that she overheard the defendant telling his girlfriend

6    Chantel Forrest, he was planning to rob a bank.  He

7    asked Ms. Comtois to drive him to the bank, but she

8    refused, after which she reported he had money that he

9    owed her on a debt.

10           Chantel Forrest would testify that Mr. Harris

11   told her he was planning on robbing a bank a couple

12   weeks prior to the West Bank robbery.  And then the

13   night before that, she called Ms. Comtois and told her

14   that Mr. Harris had robbed a bank.  She also identified

15   him out of a photograph array on October 21st of 2004.

16   The evidence would show that the deposits of the West

17   Bank were insured by the Federal Deposit Insurance

18   Corporation.

19           The evidence would also show that on October

20   -- I'm sorry -- November 9th of 2004, at the U.S. Bank

21   in Iowa City, which is in the Southern District of

22   Iowa, witnesses would describe a black male subject in

23   a gray hooded sweatshirt enter the bank.  The teller

24   offered to assist him at the window when the subject

25   approached the teller, provided a note saying give me

1   all your money, hurry up or die.  That the teller

2   provided him approximately $1,985 of U.S. currency, and

3   on that date it was in the care and custody and control

4   of the U.S. Bank.  That the teller, subsequently shown

5   a photograph array, picked out the photograph of the

6   defendant, saying he scared her; it looked like the

7   robber to her.

8        Amanda Comtois was also shown the surveillance

9   photos from this bank robbery and also IDed the

10  defendant as being the robber.  On November 9th of

11  2004, the deposits of the U.S. Bank in Iowa City were

12  insured by the Federal Deposit Insurance Corporation.

13  Those are essentially the facts that the government

14  would present if this matter proceeded to trial.

15       THE COURT:  Thank you, Mr. Westphal.  Mr.

16  Robertson, are you in agreement with the summary of

17  facts that Mr. Westphal has recited into the record?

18       MR. ROBERTSON:  We would agree that they are

19  substantially correct.

20       THE COURT:  Mr. Harris, I'm going to ask you

21  to stand again, please.  And I want to ask you on the

22  record, Mr. Harris, while you are under oath, how do

23  you plead to Count 1 of the superseding indictment;

24  guilty or not guilty?

25       MR. HARRIS:  Guilty.

1          THE COURT:   How do you plead to Count 2 of the

2    superseding indictment; guilty or not guilty?

3          MR. HARRIS:   Guilty.

4          THE COURT:   Are you pleading guilty to Counts

5    1 and 2 of the superseding indictment because you are

6    in fact guilty?

7          MR. HARRIS:   Yes, sir.

8          THE COURT:   Did you do what the government

9    says you did in each of those counts?

10          MR. HARRIS:   Yes, sir.

11          THE COURT:   Are you pleading guilty this

12    morning, Mr. Harris, voluntarily and of your own free

13    will?

14          MR. HARRIS:   Yes, sir.

15          THE COURT:   And you are telling The Court this

16    morning that no one has coerced you or threatened you

17    or made promises to you so that you would enter pleas

18    of guilty to Counts 1 and 2 of the superseding

19    indictment; is that correct?

20          MR. HARRIS:   Yes, sir.

21          THE COURT:   Thank you, Mr. Harris, you may be

22    seated.  I accept Mr. Harris's pleas of guilty to

23    Counts 1 and 2 of the superseding indictment.  There is

24    a factual basis in this record for the pleas that he

25    has entered to each of these counts.  I also find Mr.

1  Harris has entered his pleas of guilty to Counts 1 and
2  2 of the superseding indictment voluntarily and of his
3  own free will, and he has stated that he has not been
4  made promises or threatened or coerced to enter these
5  pleas of guilty.

6           Mr. Harris knows and understands that by
7  entering these pleas of guilty, he has waived both his
8  right to a trial by jury and his right against
9  self-incrimination.  Mr. Harris also knows and
10 understands that he may not withdraw his pleas of
11 guilty if he is dissatisfied with the sentence that is
12 imposed in this case.  However, Mr. Harris has
13 acknowledged that he understands that he has not waived
14 his rights of appeal to either the conviction in this
15 case, or any sentences that are imposed.

16          Today I will file a report and recommendation,
17 recommending that the district judge accept Mr.
18 Harris's pleas of guilty to Counts 1 and 2 of the
19 superseding indictment, and that judgment be entered on
20 those pleas.  Counsel will have ten days from today in
21 which to file written objections to the report and
22 recommendation.  I am today ordering a presentence
23 investigation report.  Counsel will have 14 days from
24 the receipt of the preliminary draft of that report to
25 file objections or to note errors or omissions in the

1    report.  We will have a status conference, which we can

2    do by telephone if that is helpful, on February 28th,

3    2006, at 8:30 a.m.  And at that time we will hopefully

4    select a date for sentencing, and to discuss any other

5    issues that may come up during the sentencing hearing.

6    Mr. Westphal, anything else that we need to address

7    this morning?

8            MR. WESTPHAL:  No, Your Honor.

9            THE COURT:  Mr. Robertson, on behalf of Mr.

10   Harris, anything else that we need to take up?

11           MR. ROBERTSON:  No, Judge.

12           THE COURT:  Thank you very much.  We'll be in

13   recess.

14           (The hearing concluded at the approximate hour

15   of 9:35 a.m. on November 18, 2005.)

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES OF AMERICA,          )
                                        )
 2                                      )
                           Plaintiff,   )CASE NO. 3:05-cr-525
 3                                      )
                                        )
 4             vs.                      )
                                        )CERTIFICATE OF
 5   LEBARON HARRIS,                    )TRANSCRIPT
                                        )
 6                         Defendant.   )

 7

 8           I, Kara M. Sullivan, a Certified Shorthand
     Reporter in and for the States of Illinois and Iowa,
 9   hereby certify that I reported the evidence in the
     hearing of the above-entitled case, before The
10   Honorable Thomas J. Shields, U.S. Magistrate Judge, and
     that the above and foregoing typewritten transcript,
11   consisting of 18 pages, is a full, true and complete
     translation and transcript of all the shorthand notes
12   of the evidence taken down and reported by me at the
     hearing of said cause and contains a full, true and
13   complete report of all the evidence offered or
     introduced, all objections, and all rulings of The
14   Court.

15           In witness whereof, I have hereunto set my
     hand this 19th day of July, 2009.

16

17          _____
                 Kara M. Sullivan, CSR, RPR
18               Certified in Iowa & Illinois
                 IL CSR No. 084-004482
19               637 4th Avenue West
                 Andalusia, Illinois 61232
20               (309) 798-5198

21

22

23

24

25
```